NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**REMBRANDT SOCIAL MEDIA, LP,**
*Plaintiff-Petitioner,*

v.

**FACEBOOK, INC.,**
*Defendant-Respondent.*

2014-111

On Petition for Permission to Appeal pursuant to 28 U.S.C. § 1292(b) from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-00158-TSE-TRJ, Judge T. S. Ellis III.

**ON PETITION**

Before PROST, O'MALLEY, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

**O R D E R**

Rembrandt Social Media, LP, petitions for permission to appeal an order of the United States District Court for the Eastern District of Virginia that excluded Rembrandt's proffered expert testimony on damages under

Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court certified the order for appeal under 28 U.S.C. § 1292(b). Facebook, Inc., while disagreeing with Rembrandt's challenges to the exclusion order on its merits, agrees with Rembrandt that this court should hear this appeal under § 1292(b). We deny the petition.

A

Rembrandt sued Facebook for patent infringement and sought reasonable royalty damages. Rembrandt's expert issued a report proposing a royalty calculation in a running-royalty form, using a royalty base multiplied by a royalty rate. Facebook filed a pretrial motion to exclude testimony by Rembrandt's expert based on that report.

The district court granted the motion based on its finding of two serious flaws in the proposed testimony of Rembrandt's expert. First, the court concluded that the expert had not properly apportioned Facebook's revenue to "the features actually causing the alleged infringement." Second, the court concluded that the expert had improperly used surveys about the importance to users of various features of the Facebook service, because he equated survey-result percentages reflecting importance with percentages of advertising revenue received by Facebook, without adequate analysis. Those flaws infected the proposed royalty base as well as the royalty rate, the court held, requiring exclusion of the expert's testimony based on the report.

At the request of both parties, the district court then certified the inadmissibility ruling for interlocutory appeal under § 1292(b), which authorizes a district court to certify for appeal an otherwise-unappealable order when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the

ultimate termination of the litigation." 28 U.S.C. § 1292(b). In the same certification order, the court stayed further district-court proceedings in the case, cancelling the trial that was scheduled to begin just a few days later. Accordingly, liability for patent infringement has not been tried or conceded or otherwise established.

B

Under the express language of § 1292(b), this court has "discretion" whether to "permit an appeal to be taken" under the provision. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 n.9 (1994) (noting "broad" discretion). In this case, we conclude that we should not permit the appeal. The district court's rationale for certifying the matter does not persuade us that we should permit the appeal, and several considerations convince us that we should not.

1

In determining that there was a controlling question of law, the district court considered whether it could reach a liability judgment without damages evidence. The district court observed that this court "has held that a patentee that has proved infringement has also proved the existence of damages [footnote citing *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990)], but given the uncertainty in this case regarding plaintiff's ability to put forward any evidence of damages, it is appropriate to certify this issue . . . for resolution on the question of the admissibility of plaintiff's expert report and related testimony on damages." ADD.48. As *Lindemann* itself makes clear, however, the "fact of damage"—including harm to the "right to exclude"—is different from the quantity of "damages" (the latter consisting of the compensation appropriate for the amount of harm). *Lindemann*, 895 F.2d at 1406; *see also, e.g.*, *Am. Stevedore Inc. v. Porello*, 330 U.S. 446, 450 n.6 (1947); *Nycal Offshore Dev. Corp. v. United States*, 743

F.3d 837, 844 (Fed. Cir. 2014) (existence of loss different from quantification of loss in contract and other contexts). Thus, liability may be tried and established here even if the district court's pre-trial *Daubert* ruling is not reconsidered before or at trial and even if that ruling leaves Rembrandt with no proof of damages.

Apart from the potential implication of its reading of *Lindemann*, the district court did not say that the parties could not go to trial on liability without the excluded evidence. The district court did not even foreclose Rembrandt from presenting damages evidence apart from the excluded evidence, expressing "uncertainty" about that possibility. ADD.48. Nor did it foreclose the possibility of nominal damages or declaratory or injunctive relief.

In addition, neither the district court's order nor the parties' submissions make clear that the case *would not* go to trial on liability—even that it would not require a jury trial—if we immediately reviewed the pretrial *Daubert* ruling on damages and affirmed it. For example, Facebook has not stated that it would accede to a judgment of infringement of a valid patent in order to obtain a final judgment appealable on damages or other grounds. Likewise, the district court did not state, and the parties do not agree, that the case would not go to trial on liability if we immediately reviewed the pretrial *Daubert* ruling and reversed it. Accordingly, we have no firm basis for predicting that immediate review here would produce a saving of the court's or litigants' resources or shorten the time to complete resolution of the case.

2

The parties here present only what would seem to be a fairly common set of assertions about the possible value of an interlocutory appeal. Facebook urges that, if the exclusion order were to stand, Rembrandt would have remaining no meaningful claim to relief, while Rembrandt makes no such concession, and the district court avoided

any conclusion on that subject. Rembrandt makes the very generally applicable observation that an appeal now "could" promote settlement by aiding in "the correct valuation of the lawsuit," Pet. at 19, while Facebook says nothing at all about possible settlement, and neither did the district court. In these circumstances, it is not evident that there is anything to distinguish this case from many others in which it could be said that the application of record-specific legal standards for damages is unclear.[1]

For that reason, we must consider the possible systemic effects of undertaking interlocutory review here. There is good reason to be wary of any action that would broadly invite interlocutory review of a record-specific damages ruling like the one at issue here, rendered before any determination of liability. Most obviously, an appellate review of such a ruling could easily turn out to have no consequences. After the appellate decision, proceedings on liability could result in a determination of no liability, mooting any issue of damages.

Interlocutory review also could turn out not to save resources, or shorten the time to the ultimate conclusion of the case, despite hopes that it would. For one thing, such review delays trial, and once trial is delayed, there

---

[1] Rembrandt cites two decisions on damages issues reviewed in § 1292(b) appeals. Pet. at 12 n.26. Both involved fairly pure legal issues, not record-specific applications. *Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011) ("whether, in the absence of physical injury, a prisoner is precluded from seeking punitive damages by the Prison Litigation Reform Act of 1995"); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261 (9th Cir. 2009) (whether punitive and compensatory damages are available as forms of relief for retaliation in violation of the Americans with Disabilities Act).

may be much less reason for denying an opportunity to correct defects in proposed damages evidence. In this case, in stating that it would be unfair to permit Rembrandt's expert to revise his proposed testimony, the district court relied on the fact that trial was "scheduled to commence in less than two working days." ADD.47. But the choice of a § 1292(b) certification, accompanied by postponement of trial, would seem to undermine the stated premise of the refusal to allow modification of the proposed damages presentation.

Moreover, as the district court here recognized, the aim of the reasonable-royalty calculation is to measure the market value of the invention itself—what it is worth to potential users, compared to their using only non-infringing technologies. *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation."), quoted at ADD.63 n.18; *see Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915) (reasonable royalty damages measure "value of what was taken").[2] In establishing the value

---

[2] The district court stated that, if the patent technology improves on "an existing technology, Rembrandt is only entitled to a royalty based on the incremental value provided by that improvement"; it added that "the royalty base is meant to represent value gained from the alleged infringement, and thus the amount that a hypothetical licens[ee] would have paid to license the patent." ADD.62. As to the second statement: Because the "base" is not "the amount that a . . . licens[ee]" pays, the court presumably meant to refer to the bottom-line royalty payment—whether that is a lump sum or a running payment calculated as a product of base and rate (*see, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 70 (Fed.

of the invention itself, "the patentee . . . must in every case give evidence tending to separate or apportion . . . [its] damages between the patent feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (internal quotation marks omitted). And in implementing that requirement, we have barred use of too high a royalty base—even if mathematically offset by a "'low enough royalty rate'"—because such a base "carries a considerable risk" of misleading a jury into overcompensating, by "'skew[ing] the damages horizon for the jury'" and "'mak[ing] a patentee's proffered damages amount appear modest by comparison.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67, 68 (Fed. Cir. 2012) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1329-20 (Fed. Cir. 2011)).

Those requirements—specifically, the requirements to focus on reliable evidence of value apportioned to the invention itself and to avoid potentially misleading forms of presentation of evidence—support "certain general rule[s]." *Id.* at 67. But given the nature of the inquiries involved, the rules are not so precise in their application or scope as to make a single opportunity for compliance clearly or always enough—though, in the right circumstances, a district court may well decide that it is. For those and the other reasons stated, we decline to hear the § 1292(b) appeal in this case.

Accordingly,

IT IS ORDERED THAT:

The petition for permission to appeal is denied.

---

Cir. 2012))—which "represent[s] value" (but not necessarily all the value) gained over existing technology, ADD.62.

FOR THE COURT

<u>/s/ Daniel E. O'Toole</u>
Daniel E. O'Toole
Clerk of Court